## KIND v. FLORIDA RACING COMMISSION, et al.

Circuit Court, Dade County.

March 6, 1952.

100

E. F. P. Brigham, Phillip Goldman of counsel, Miami, for plaintiff.

Manuel M. Garcia, Tampa, for Florida Racing Commission.

Carl T. Hoffman of Hoffman, Kemper & Johnson, Miami, for Miami Beach Kennel Club, Inc.

VINCENT C. GIBLIN, Circuit Judge.

Invoking the declaratory decree statute, the plaintiff, an employee and stockholder of the defendant Miami Beach Kennel Club, Inc., seeks a determination of the question whether, under governing laws, rules and regulations, the racing commission has the authority and power in the circumstances revealed by the pleadings to cite him to appear before the commission "to show cause why action should not be taken by the commission to sever [his] financial interest in Florida race

tracks," or to take any action which would, if taken, affect or interfere with his status or rights as an employee or as a stockholder of the defendant corporation.

The case has been heard on the plaintiff's motion for the entry of a summary decree on the pleadings. At the hearing it was stipulated by counsel, in the presence of the court, that no factual dispute is involved and that the case can and should be decided on the legal questions presented. I assume, therefore, that the factual allegations of the bill as to which the defendant commissioners aver they have no knowledge are to be taken as true.

The factual situation from which this litigation emerged is nevertheless of importance and interest because its exposition will demonstrate, I think, the dangerous consequences which may be produced by the exercise of bureaucratic power which "is not canalized within banks that keep it from overflowing".

The plaintiff, who is fifty-five years of age, is an American citizen and a resident of this county. For more than thirty years he has earned a livelihood in Florida and in other states as an employee at legally operated horse and dog racing tracks. As a result of experience and industry he has become a skilled rapid calculator. He has served his present employer, the defendant corporation, from 1931 (when pari-mutuel wagering on the results of horse and dog races was legalized in Florida) until now. Throughout such period (of more than twenty years) he has been licensed by the racing commission to pursue his occupation and has paid annually the occupational license tax prescribed by statute. He has never been accused, and is not now accused, of having violated any law or any rule or regulation of the commission governing the conduct of persons employed at, or connected with, the race tracks operated in this state; and it has never been charged, and is not now charged, that by law, or by rule or regulation, qualifications are prescribed which he does not possess.

With savings accumulated during his years of employment, the plaintiff has acquired and owns seven hundred and fifty shares of the forty thousand shares of the issued capital stock of the defendant corporation. He owns, therefore, less than two per cent of such outstanding stock.

On September 1, 1951 the racing commission, through the defendant chairman, advised the defendant corporation that

in examining its application for racing dates the commission had found "the names of certain stockholders who, according to reliable information in possession of the racing commission, are undesirable" and whose "presence in racing in Florida in the capacity of stockholders, officers or employees is regarded by all the members of the Florida Racing Commission as being undesirable and hurtful to racing in this state." The plaintiff's name was among the several listed. The defendant corporation was asked to notify the persons named of the commission's attitude and to request their accession to the commission's wishes.

The plaintiff was notified, but he refused to relinquish his employment or to dispose of his stock; and on October 17, 1951, he was served with a "citation", which read: "Public opposition having been made to your connection with Florida racing, you are hereby cited to apear before the Florida State Racing Commission in its offices in the Pan American Bank Building, in the City of Miami, Florida, at 10:30 A. M. November 17, 1951, to show cause why action should not be taken by the commission to sever your financial interest in Florida race tracks." The scheduled hearing was deferred to await the outcome of this litigation.

I am called on to decide whether the defendant commissioners' procedure and contemplated action are within the limits of the authority and power delegated to the commission by the legislature. I hold that they are not. To hold otherwise would be to rule, it seems to me, that the legislature has granted to the commission authority and power to do anything it pleases in any way it chooses to correct what it regards as evil in the operation of race tracks and in the conduct of racing.

It is undeniably true that the operation of race tracks at which pari-mutuel wagering on the results of horse and dog races is sanctioned, unless stringently controlled and regulated, is likely to be productive of much evil. There exists the temptation to fraud by the "fixing" of races, by the stimulation of the animals which participate in them, by the manipulation of betting "pools" and by other pernicious practices. Racing and the attending crowds attract bookmakers, pickpockets and other objectionable persons whose presence and activities militate against the public interest and welfare.

The business is one which clamors for rigid and unrelenting supervision, control and regulation by the state in the exercise of its police power; and the evident purpose and policy of our legislature, in enacting the law by which pari-mutuel wagering is permissible at race tracks, was to provide such supervision, control and regulation. It was necessary to delegate the authority and power to effectuate the legislative purpose and policy to some agency. The racing commission was created. Certain authority and powers are expressly and specifically delegated to it and it is vested with all other authority and power "necessary and proper to enable it to execute fully and effectually all the purposes of" the legislation. It is empowered to exercise and effectuate its authority and powers by the making and enforcement of "rules and regulations for the control, supervision and direction of all applicants, permittees and licensees, and for the holding, conducting and operating of all race tracks, race meets or races held in this state; provided, such rules and regulations shall be uniform in their application and effect"; and "the duty of exercising this control and power is made mandatory upon such commission."

The legislation, however, does not privilege the commission to exercise unbridled discretion. Assuming (without deciding) that it has the authority and power to prescribe requirements (other than those prescribed by statute) which must be met to qualify persons for employment at race tracks or for stock ownership in corporate operating companies, such authority and power must be exercised by the adoption and promulgation of reasonable rules and regulations in which definite and understandable policies and standards are set forth. With the authority and power to adopt and promulgate such rules and regulations (if such authority and power exist) there necessarily goes the duty to adopt rules and regulations which are "uniform in their application and effect." They must apply impartially. When adopted and promulgated they become public records, open to all persons concerned, so that they may know the conditions to which they must conform.

No rules and regulations militating against the plaintiff's employment or stock ownership have been adopted and promulgated by the commission. To its present members, however, the plaintiff has become "undesirable" as an employee and stockholder of the defendant corporation and, because (they say) "public opposition" to his "connection with Florida

racing" has developed, he has been cited to appear before the commission "to show cause why action should not be taken by the commission to sever [his] financial interest in Florida race tracks."

To me, what the commission has done and proposes to do is an intolerable excess and abuse of its authority and power. I shall not attempt to outline the scope and limits of its authority and power or to chart its future course in any situation other than that under consideration. All that I should decide, and all that I am deciding, is that in the circumstances to which I have adverted it has exceeded and abused its authority and power. To go further would be to answer questions which are not before me.

For the reasons stated, it is declared and decreed (a) that the "citation" of October 17, 1951, issued by the Florida State Racing Commission, through the defendant chairman, D. C. Jones, and directed to the plaintiff, David Kind (a copy of which, marked "Exhibit D," is appended to and made a part of the plaintiff's bill of complaint), by which the plaintiff was cited to appear before the commission "to show cause why action should not be taken by the commission to sever [his] financial interest in Florida race tracks," was issued without warrant or authority of law and that its service on, or receipt by, the plaintiff imposed no duty or obligation whatever on him to appear before the commission, as directed, or to take any action whatever in response or obedience to the commands and requirements of such "citation"; and (b) that such commission has no authority or power, in the circumstances now existing, to hold or conduct any meeting or hearing for the purpose stated in such citation or to take any action which would, if taken, affect or interfere with the plaintiff's status or rights as an employee or as a stockholder of the defendant corporation, Miami Beach Kennel Club, Inc.

I assume that because of the court's ruling there will be no necessity for the granting to the plaintiff of any supplemental injunctive or other relief; but the court retains jurisdiction of the cause for the purpose of granting and effectuating such supplemental additional, coercive or injunctive relief as the plaintiff is or may hereafter be entitled to in the cause, and for the further purpose of determining, fixing and assessing the costs of the suit and requiring their payment.